Thank you, your honors. May it please the court, my name is David J. Kline and I'm proud to represent Ms. Sandra Beatriz Bustamante-Leiva and her sons today. They want me to thank you, of course, for allowing oral argument in their case, your honors. I want to begin by saying that if the Attorney General of the United States of America has his way, the argument would be a lot different today from the way that Ms. Bustamante-Leiva and her sons would argue. Virtually every case decided by a single member of a non-citizen appeal, the Board of Immigration Appeals cannot reverse, it cannot reverse, no matter how wrong in the law or the facts a single board member is. In asylum cases, your honors, that can mean life and death, and the plain lack of fairness, impartiality, and due process violate the Constitution. I will kind of skirt along the facts, they're important here, your honors, but I'll try not to linger on them. In 2004 or 2005, Ms. Bustamante-Leiva saw gang members in Honduras take a man into an abandoned house, and there she heard the sounds of his torture and his death throes. In about 2012, Ms. Bustamante-Leiva and her family lived in a premise that's abutting a lot, where gang members tortured, killed, and buried people. Excuse me, may I play around with this a little bit? It's kind of messing up my... Please do, you know, be sure it's a situation where you can hear properly. Okay, can you hear okay? Yes, we're fine. Okay. Thank you very much. Thank you very much. I understand. The smell where they lived, where the gang members tortured, killed, and buried people became so persistent and terrible that it impregnated the walls, and when the sun shone on it, you could smell, once again, the smell from the torture and burial place. Ms. Bustamante-Leiva rented a truck in December 2012 in order to move after she heard gangs saying that they were going to recruit children in excess of 12 years old, like her children. In a new neighborhood, she started proselytizing to convert young people to Christianity and keep them out of gangs. Gang members weren't happy about these conversions, of course. Ms. Bustamante herself received a call from a gang member. He said that they knew where she lived with her mother and the children. They knew her husband was in the U.S. The caller demanded $25,000 on purists. That's about $1,000 U.S. by quote tomorrow, and a day later, she couldn't get the $1,000 U.S. to them. The caller said, if you don't give us the money, we're going to kill, we're going to chop up into little pieces your son, we're going to put him in a bag, and we're going to kill all of you, including the dog. Don't go to the police. Her pastor, the pastor's wife, and a sister came to Ms. Bustamante's room, and they prayed in the yard. While they were praying, the gang member called again. Ms. Bustamante-Leiva put the phone down so that the gang could hear the prayer that we were making. We were condoning all that. Mr. Kline, we've read the briefs, so let's move on to the legal issues. Which socially distinct groups are you identifying here? Okay, well, there are a number of them. The one that I want to focus on most, Your Honor, is, it's a simple one. Unprotected women with children. You know, it's a social group that the single board member actually refused to examine. And he refused to examine even if, even though it was indicated on the record, even though Dr. Borman, the expert witness, testified about it, even though the Department of Homeland Security never objected in any meaningful way to it before the immigration judge, nor in the Board of Immigration Appeals. All right, so in answer to my question, you said unprotected women with children is the group that you're identifying that's protected. All right, so what do you mean by unprotected women? What does the adjective unprotected mean? Unprotected, it's in the record, it means essentially without a male assistance or without a male protection. What do we do with our case law? I'm sorry, Your Honor. What do we do with our case law that says that women targeted by gangs or women who oppose or resist MS-13, or that women who have been targeted for and resisted gang recruitment, all of these cases say that those are not protected social groups in our circuit. And so what do we do with the case law and the group that the groups, all five of the groups I think that you've identified, it seems that there is some issue with the case law in this circuit. So can you help us with that? Okay, thank you for asking that, Your Honor. It's a hard question. So anyway, I think what we need to do is try to distinguish between two things that the board says. The board says that you can't use the motivations of the gang, you can't use the gang's mind, its creation of social groups in order to be a social group that's cognizable under the statute. However, when you say unprotected women with children, you're not using any of the gang's motivation to define that, Your Honor. It is simply a social group, and to the extent there's any hint of record that essentially unprotected women with children is not cognizable in a society, in almost any society except maybe the ancient Spartans from 2,000 years ago, I have to kind of reject that. I mean, unprotected women with children is in fact a social group in my mind anyway that's cognizable anywhere in the world with the exception possibly of ancient Spartans that took them when they were seven years So the difference is those social groups that were rejected were social groups that tried to define the social group by the gang itself. And so far, some of us may disagree sometimes with that, but so far that's generally been the prevailing case law. Now one of the things that the Singaporean member did here was he kind of lumped things together and he said that these other ones that can't be protected from gang members, these other social groups, that women can't be protected from gang members, he says that those are precluded because they think that's wrong, that's not going into the motivations of the gang in doing it, that's simply saying she's unable to protect them from the gang. A true statement. And certainly if she were able to protect them, she wouldn't be qualified for asylum anyway. So at most, when it says something like can't protect them from the gang, it is at most, if it were worse, simply harmless error. And if it's harmless error, I'm sorry your honors, there's no way to convince me and there's a lot of other people that can't be convinced that the U.S. Congress meant people to be sent back to their countries to face possible death because of a harmless error. The reason that I asked about the Fifth Circuit's precedent on this is because even assuming arguendo that the procedural handling of the case by the IJ and the board was an error, we have a doctrine in the Fifth Circuit in immigration cases called the futility doctrine that we don't send cases back if you can't make a case because we said it's already not a PSG. And it's in Gonzalez-Veliz and Jocko and several cases. Can you tell me, tell the court, why it would not be futile to send this case back given our precedent? I'm begging your pardon, your honor, but I thought generally that that's what I was doing. I was saying that this case, where the motivation is not of the gang, is not really part of the definition of the gang, is an entirely different thing. So it's not futile because we haven't yet spoken on unprotected women as a particular PSG. Is that your position? Yes. Yes, thank you, your honor. Thank you. There are a whole lot of things here that I could possibly delve into. I'd prefer, of course, to answer any of the questions that you folks might have. I do want to say, as we move forward, that nobody really dealt with the persecution because of religion aspect of this case. Now, there was a definition of social group, a definition of women who were engaged in religion. This is not about the social group. This is something entirely different. Forget social groups. This is straight up, we're going to persecute you because of religion. That was not dealt with in this case. That was not something that the board members should have dealt with, not something that the immigration judge should have dealt with and did not deal with. That alone is sufficient in order to cause a three-man effect to the board. So is it your position that the country was persecuting because of the religion or that the gang was persecuting and the country showed acquiescence in the persecution? How does that work, that theory? Okay, in this particular case, it would have been the gang was persecuting. But in this particular case, make sure I don't make an error here, in this particular case, they didn't deal with the issue of whether the country could protect, was able and willing to protect. Am I blanking out? I don't think that was not really the issue in this case. Now, there is an underlying issue and we submitted a motion to state proceedings about a new regulation. And the new regulation, of course, would be redefining social groups in the way that the president directed the attorney general to do it. We have actually submitted our own petition for rulemaking to the attorney general and in response to the motions and state proceedings until that is done, the government has taken no position. I think one more thing I want to try to dash to and hurry up is that the board member made an egregious error in making the board member's decision. The board member said there was no other motive, none other than simple extortion. But, excuse me, let me try that again. The immigration judge said there is no other motive, none other than extortion. When it got to the board, the board member changed that. The board member said it's not primarily anything other than extortion. And that's a great and egregious error by the board member. And it is because what he's saying is this case is actually a mixed motive case. And if it's a mixed motive case and he didn't deal with a mixed motive, then that is, of course, reversible error and the case should be reversed. I have two seconds, Your Honor, so unless there's a question, I'll sit down. You have saved time for rebuttal. Thank you, Mr. Clark. I have five minutes for rebuttal. Yes, that's right. Mr. Remnitz. Okay. Thank you very, very much. May it please the Court, I'm Tim Remnitz on behalf of the United States Attorney General. This immigration case petitioner, a mother and her three children, challenged the decision of the agency denying her applications for assignment. The easiest way for the court to deny a petition for review in this case is the same way the agency did, not on a particular social group, but on nexus. Pull that microphone. Gotcha. Thank you. The spots of issue in this case is nexus, because there's simply no protected ground at issue in this case, and the court need go no further than that issue. You heard district counsel go over testimony. Testimony simply said that on one particular day in April 2015, she received anonymous phone calls, anonymous text messages, threatening to harm her oldest child and her family if she didn't pay money by the next day. They did identify the name of her oldest son and where he went to school. They identified that they knew her husband worked in the United States, and that was the sum total of what the anonymous caller said. She went to a pastor's house the next day, and then she went to her sister's house four hours away, and then departed to the United States. There's nothing on this record besides criminal extortion, as the immigration judge said, and, in fact, that was underscored by the expert testimony the petitioner presented of Dr. Bowerman. Dr. Bowerman explained that gangs will target whoever they think has the ability to pay, and they think that if someone has a relative in the United States, that person has the ability to pay. They identified she had a relative in the United States, and then they use whatever leverage they have over that person, which is commonly the person's family or children, Dr. Bowerman explained. I'm confused that you say that it's one phone call. I believe it's one phone call. There were two phone calls, not one phone call, and then there were multiple text messages. Correct. So to say it's just one phone call in one day, that's not really the true picture of what was happening. This is two phone calls and then multiple threatening text messages from the gang. All occurring in one day, though, I believe. And if not one day, the next day. So maybe what the panel is getting at is when this court has found persecution based on threats, and I will address that. But first I would like to stick with Nexus for a moment. We have to have some kind of protected ground at play. So even if we had past persecution, there still has to be protected ground. There's nothing mentioning any particular social group or any indication she was targeted on any of the pro-op or particular social groups. There's nothing indicating she was targeted based upon her religion, and there's nothing indicating she was targeted based upon her political opinion. All this is is a textbook gang extortion case. And that's what Dr. Bowman even explains in his testimony. And that's where the case ends as far as asylum and holding removal, because there's no Nexus. Isn't extortion a completely different inquiry than why they were targeting this group of people? That is, women where the man's not there. The moment the gangs find out, and they quickly do, that there's not a guy there, then that sets up the thing for extortion. Those are two distinct inquiries, aren't they? I believe it's the same inquiry here, because as this court has explained, that just because someone is particularly vulnerable to a gang doesn't make them a particular social group, because the gang is not targeting based on how they see them as vulnerable. It's just the fact that they might have the ability to pay, and they might be easily made to pay. There are a group of women that are there, and they have no man around, and the man's in the States. And they are vulnerable to all manners of exploitation, et cetera. Perhaps vulnerable. Yes, but what creates it is their connection, their social connection, their circumstance. That group of women that's clearly defined, and admittedly is out there in significant numbers. This must be something in the record showing that that's why they targeted this particular person. I don't think simply referencing the fact that someone's relative works in the United States, I mean, it could be a husband, it could be someone else. It's anyone who lives in the United States that has the ability to pay. The good reason, when it's a man, that the woman is there with the children, and the gangs exploit them. Perhaps, but I don't. That's a distinct inquiry. Whether that ultimately lies under our case law is a different question, but you're collapsing these two identities of a group with extortion. It is not just extortion, all people who are extorted are part of a social group. It is something else. It is that there are a distinct class of women that do not have a man there to protect them. Under both the social condition that these people are living under, that is something quite distinct. I think they are distinct. It's a different question, but I really am pushing you a little bit on your answer, which is a little quick and I don't think itself answers the question of, well, this is extortion, and extortion is because you're being extorted. Obviously, it doesn't create a social group. I agree they are distinct inquiries, but what we're looking at under the substantial evidence standard review is a factual finding. Whether the facts compel the conclusion that this person was extorted based on a protected ground, and with the facts we have here where they simply mention she has a relative in the United States, I don't think that compels the conclusion that they targeted her based on a particular social group of unprotected women with children. It can also reasonably show to the fact finder they targeted her because they knew she had a relative in the United States who could pay the extortion demands. I don't think that's an unreasonable fact finding, and that's what the court would have to find to overturn the nexus finding in this case. When the gang called Bustamante, they referenced her children and the fact that her husband was in another country. Dr. Borman testified that she was targeted because her husband worked in another country and emphasized gangs who threatened to harm children to incentivize women to cooperate, et cetera. So there is a very distinct argument out there, and it just strikes me that it's a little too facile and too quick to say, well, just because you're extorted is not enough. It's not just because you're extorted. There are an identifiable group of people there who are particularly vulnerable, and that's not being addressed with all respect. Respectfully, what the government is arguing is there's a reasonable basis for the nexus finding. You could disagree, but it has to compel that contract conclusion. It has to compel that they were targeted based on their particular characteristics in this case. And really what the record shows is just they're targeted based on anybody who has the ability to pay. At least that's a reasonable finding to pull from this record. If we can get to particular social groups. Do you want to talk about alleged the problem that there's some arguments that the process is wrong because it's a single judge or that the New Orleans statistics are different or any of that sort of thing? Yes. Well, the government argues this claim is preclosed by longstanding court precedent universally rejected that these streamlining regulations violate due process. Now, the original claim, the original regulation passed in 1999, was about affirmance of that opinion, and that's what spawned the initial legal challenges to this streamlining regulations. And the courts uniformly all found there's no due process violation in this case because. Have we found that? Yes. What case do you cite? This is precluded. This argument is precluded. Is that correct? Yes. I believe I'm pronouncing that right. But it's heavily relied upon in the government's brief. Okay. Is the other argument also precluded about that they're not statistically being treated the same as other people in the country? Well, that argument is also precluded by those cases. They address a similar argument about statistics. And more recently, and this is cited in my colleague's brief, but not the brief we filed in this case, but a recent case by Singh just about how someone can't just cite statistics as a grassroots immigration judge bias. But it is cited in that case, Celia Hennig,  and they said we're not going to just implicitly find bias because of a denial rate. What we're looking at for due process is that there's a reasoned decision for us to review, the panel, the court to review, and whether or not you've had a full and fair hearing in front of an immigration judge. And the streamlining regulations provide both of those things. You have your hearing from the immigration judge, and the court has a reasoned decision to review, either the immigration judge and its affirmance of that opinion, or if it's a single member, an immigration judge decision with whatever added reasons that single member of the board adds. So you have even more process under this regulation than you had under the regulation the court already found was sufficient with due process. So that's why we claim it's foreclosed, because while it didn't exactly address the single member section of this case management regulation, it addressed the affirmance of that opinion section, which provides less process, arguably, than what this regulation provides. Does the government take a position on whether that is a cognizable social group? The government does take a position, yes. In our brief, we argue you don't have to reach that claim, but it's not a cognizable particular social group. That women who are on their own and that it's known that they're on their own. The first... Unprotected women. I would like to address what Petitioner claimed was the one particular social group they're relying upon at this point, unprotected women with children. As the board explained, that was not the particular social group they delineated in front of the immigration judge. They delineated these various permutations of unprotected women with children targeted by gangs. I'm sorry, I just want to understand your question. You're answering that they didn't raise it or preserve it. That's not what I'm asking. Does the government take a position on whether that could be a proper cognizable social group if properly presented? If properly presented, the government still says that's not a particular social group because it's still being defined circularly by the harm feared. Unprotected from whom? From gangs. Under the new proposed regulations, would it be a proper protected social group? There's no way of predicting. We don't know. We don't know what those regulations are going to say. Or if the regulations will ever be passed. So they're not on the verge of being done, or what's the status of those? As this court commented in the case in July, it's long overdue. We don't know when they're coming. I don't know the status of those regulations, if they will ever be passed. I assume they will be passed if so. Well, what's the basis of the government not taking a position on the motion? It was just that the court can do what it wants. It can hold the case if it wants to use regulations. But I'm not aware of any courts that have done that, that have actually held a case to await a rulemaking. But also— Would it be futile? I think in this case it's futile because there's already this positive nexus determination. Whatever rulemaking is going to happen with a particular social group, it's not going to rehabilitate the nexus finding in this case. It's not going to rehabilitate the past persecution finding in this case. Does our circuit precedent dictate whether or not this is a cognizable social group? Unpublished decisions only. So not— Giacco and Gonzales-Felice are published decisions that say that where it's futile, we don't send it back. Oh, futility, yes. Yes, that is published decisions. I think futility would govern that answer. But you say that the cases that we've said that wouldn't be a social group are not published? Is that your position? Ones that are cited in their brief are unpublished decisions of this Court, which specifically address these exact groups, one in El Salvador and one in Honduras. They're unpublished. Does the Court have any questions about jurisdiction over the streamlining process? The government says there is no jurisdiction over that decision and the Court should follow the Second Circuit in Cambodia. I know other courts have disagreed with that, but most recently, the Sixth Circuit was the last court, the most recent court to define there was jurisdiction. That was 2018. In 2019, the federal government passed a regulation specifically noting that these case management regulations do not create or are not meant to create any kind of procedural rights for a petitioner. That makes sense because these are case management tools. This is not something that's meant to benefit the petitioner. It's meant to respond to a crushing backload of cases that the board created these streamlining regulations to address. And the Second Circuit explained in Cambodia when it's this internal process just to handle case management, that's not something that courts know best to review. Like a higher court wouldn't know how to review this court's docket management system better than this court, and the board knows best how to manage its own case docketing system. That's why the government argued there. Why does the government prefer the nexus approach? Is that because the government thinks it's easier? Easier, yes. Is that the reason? I believe it's the most apparent on the record. It's the easiest way. There's nothing with the testimony that Ms. Bustamante gave in her declaration. There really is nothing indicating they targeted her on account of any and such criminal extortion. In a particular social group, it would be difficult as moving parts, the particularity of the social distinction, which is also another reason why the agency denied the PSGs in this case was for lack of social distinction. If we were to disagree on the nexus, then what should we do? You could reach past persecution as well. If there's no past persecution in this case, no well-founded fear, that's also dispositive of the issue in this case. And past persecution, I believe, is also not compelled in this case. We have the threats that occurred, anonymous threats over the course of one or two days. And this court has held that anonymous threats without any sort of immediacy to them, that doesn't compel a finding of past persecution. Now, the case petitioner relies upon. Your own prosecutor here said that they were targeted on account of her status as an unprotected woman with children. That's your own prosecutor, if you will. Who? Dr. Bowman, I believe, said that. I'm just quoting what from the record is. What part of the record is that, respectfully? The prosecutor's own statements indicated that Ms. Stavanti was targeted on account of her status as an unprotected woman with children. My impression was that the assumptions all along was that was the status of things, whether that's protected or not is something else. Do you believe that the agency found that she was presumptively targeted based on that particular social group? Well, I thought that it was essentially undisputed that the reason that she was targeted was that she was a woman without a man there, and that's what the gangs look for. And what happens is the gangs also follow up on a man coming back to anybody that assists. That's the petitioner's argument, but it's very much disputed by the government. That is the big dispute in this case. Well, you're disputing the facts or you're talking about the – as I understand your argument, there really is no set of facts under which you would find the requisite social groups here. Under the facts – Define this. There are no set of facts under your argument. That's correct. That is the government's argument. Yeah, that's what I thought. It's a particular social group also that's a social distinction, and that is also lacking in this case. So what Dr. Bowman in the petition – What is a social distinction? A social distinction is how society here in Honduras perceives a group, and if they do perceive a group. So there has to be evidence in the record showing that society as a whole perceives these individuals – It's a doctor's testament to that there was such a thing, whether you accept it or something else. That is part of the social matrix that's there. The gangs themselves virtually run the government. It's the reality of the real world, and we know that. Maybe you don't know that, but it's becoming – we've seen enough of this – that effectively on the ground, it's the gangs that's controlling. Now, you don't have to accept that reality or not, but my question is that if that's true, where are we? Well, I want to – It doesn't matter if that's true. There are different parts of the case. Whether or not gangs are – that's a control thing. It goes to unwilling, unable. That's not a finding that the agency reached in this case. We're looking at social distinction. That does not depend on whether the government can fight gangs. That depends on how society views a group. In this case, the only evidence the petitioner presented on the views of unprotected women with children came from the perspective of the gangs. This court has very clearly stated that you cannot base a particular social group based on the perspective of the persecutor. It has to be society as a whole. So if it's not the government, and in this case if it's gangs, you cannot define a particular social group based on how a gang views a particular group. So that's why social distinction is lacking because they did not present evidence showing that Honduran society views unprotected women with children. If they actually exhausted that group, they view that as a particular social group in society. Gangs might, but a gang's perspective is not relevant to establishing social distinction. So you'd have an informationally circular group. You'd have groups that lack social distinction. And when it comes to unprotected women with children, when you lop off all the other parts of the group the petitioner did actually present to the IJ, that is also not exhausted. As the board found, they did not present unprotected women with children, just that group, properly before the agency. So just to summarize, the Nexus finding is dispositive in this case, and the court doesn't have to go any further than that. There's also no past persecution. The court has found that there has to be sustained pursuit of someone to establish past persecution based on threats. And the case the petitioner cited was a case from the FARC in Columbia where over a period of weeks they targeted this person over and over and over again with threats. They spray painted their house. They found that compelled to finding a past persecution. We have anonymous phone calls and text messages over a period of two days. It simply does not compel a finding of past persecution. Particularly when they're anonymous, you have no way of knowing if they can act on those threats. And finally, you also have no particular social group because the one they're relying upon is not exhausted, and the other one is lacking social distinction. Thank you very much. Thank you, Mr. Ramnitz. Mr. Klein for a vote. Thank you, Your Honors. I got most of that. I can't promise I got all of it. I've still got a little thing in my pocket. I do want to address several issues, I hope, very briefly that were raised by Mr. Ramnitz. And one is he seemed to forget that there is a mixed motive in this case. He seemed to forget that the board itself was the one that said primarily rather than no other excuse than extortion. And that's important because he really can't be before this court arguing more than his own client. Number two, he kept talking about how a factual determination has to be compelled. But what he has forgotten is he's forgotten a relatively new Supreme Court case called Wiro-Lasgrilla, figured by pronunciation, versus Bar 140, Supreme Court 1062-2020, in cases like deportation cases or removal cases, as they're called now. What happens if there is an uncontested record? Then the application of the uncontested facts record to the law is done de novo. It's not done this idea that there has to be a compelled determination that's different. The Supreme Court, in my humble view, your honors, has decided that it's enough now to have dealt with decisions like this decision that are made by the board with single members that can't do anything but reverse. And they've decided, I think, to get more involved. The way to get more involved is through the Wiro-Lasgrilla case. I was disappointed that Mr. Ramnitz said that under no set of facts in this case can there be a protected social group. That isn't what the board said, your honors. The board actually refused to address the issue. That's what we were complaining about, the board's refusal to address it, and therefore sending her off to Honduras to face the gangs there without even a determination. That's what you and I, Judge Elrod, spent a little bit of time talking about. And I do contest what my opponent said, that those cases that he cited were the same kinds of cases that involved here. And the answer is, no, they didn't. They were not the same kinds of cases. They might have been a different regulation, but they were not a regulation that said, too bad, so sad, nothing you can do is going to get a reversal from this single board member. That's what's different. That's what's new. That's primarily what is the unconstitutional aspect of this case. And there's no way that Szilagyi and the other two cases that he cited come anywhere near addressing that issue. Well, thank you very much, your honors. I appreciate your listening. If there are no further questions, I'll argue by one minute and two seconds. Thank you very much. Your case is under submission. Thank you, Mr. Klein. We'll now hear Mahi.